E-FILED on     8/16/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAE POONG CO., LTD.,<br>a Korean corporation<br><br>Plaintiff,<br><br>v.<br><br>ROBERT DEISS, an individual; MOTORCYCLE PRODUCTS CONSULTING, INC., a Delaware corporation,<br><br>Defendants. | No. C-05-01470 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>[Re Docket Nos. 4,5] |

Defendants Robert Deiss and Motorcycle Products Consulting, Inc. ("MPC") filed a motion to dismiss for lack of subject matter jurisdiction. Plaintiff Dae Poong Co., Ltd. ("DP Korea") opposes the motion. The court has reviewed the parties' papers and considered their arguments. For the reasons set forth below, the court GRANTS defendants' motion to dismiss.

## I. BACKGROUND

DP Korea is incorporated in South Korea, and its wholly-owned subsidiary, Dae Poong USA ("DP USA") is incorporated in California, with its principal place of business in Orange County, California. Compl. ¶¶ 3, 4. DP Korea manufactures motorcycle parts, selling them in the United States directly and

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL

through its agents. *Id.* ¶ 3. During the last year, DP Korea has been shipping some of its products to DP USA for warehousing and distribution. *Id.* ¶ 4. Upon DP USA's receipt of these products, the products' title changes from DP Korea to DP USA. *Id.* ¶ 10. The defendants are Deiss and MPC. Deiss resides in San Benito County, California. *Id.* ¶ 5. Incorporated in Delaware, MPC conducts business in California. *Id.* ¶ 6.

This action arises out of two alleged oral contracts, one between DP Korea and the defendants ("DP Korea contract") from approximately two years ago, and the other between DP USA and the defendants ("DP USA contract") from approximately one year ago. *Id.* ¶ 8-9, 11. As alleged by DP Korea, the DP Korea contract called for defendants to act as DP Korea's agents by soliciting and obtaining orders in the United States for DP Korea's after-market motorcycle products. *Id.* ¶ 8. Specifically, the DP Korea contract allegedly stipulated that after either defendant obtained an order for DP Korea's products, DP Korea was to ship the ordered products to defendants or the buyer. *Id.* In turn, the buyer would pay defendants, who would then forward the payments to DP Korea. *Id.* The last step of the process was for DP Korea to pay defendants a commission based on the purchase price of the DP Korea products sold through their efforts. *Id.* According to DP Korea, the terms of the DP USA contract were the same as the terms of the DP Korea contract. *Id.* ¶ 11; Jimmy Lee Decl. Opp. Defs.' Mot. Dismiss ("Lee Decl.") ¶ 7. DP USA took orders from defendants, maintained product inventory from DP Korea to fill defendants' orders, invoiced defendants for products that defendants sold, and was to collect payment from and pay commission to defendants. Lee Decl. ¶ 7.

DP Korea claims that defendants breached the DP Korea and DP USA contracts by failing to deliver proceeds from the sale of their products to the proper company, either DP Korea or DP USA, resulting in approximately $450,000 of damages to DP Korea and $180,000 of damages to DP USA. *Id.* ¶¶ 9, 12. Because DP USA assigned all of its right, title, and interest in its purported $180,000 claim to DP Korea six days before DP Korea filed its complaint,[1] DP Korea alone brings claims for damages resulting from defendants' alleged breaches of the DP Korea and DP USA contracts. *Id.* Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and

---

[1] DP Korea and DP USA executed the assignment on April 5, 2005. Lee Decl., Ex. A. DP Korea filed the complaint on April 11, 2005.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                  2

1  28 U.S.C. § 1359, contending that DP Korea collusively created diversity by improperly assuming DP
2  USA's rights from defendants' alleged contract breach.

## II.  ANALYSIS

4  Under Fed. R. Civ. P. 12(b)(1), the court must dismiss an action if it lacks subject matter
5  jurisdiction over it.  The plaintiff bears the burden of establishing that the court has either federal question
6  jurisdiction or diversity jurisdiction.  *See KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936); 28
7  U.S.C. §§ 1331-32.  There must be complete diversity between the parties for diversity jurisdiction to
8  exist.  *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).  In other words, all plaintiffs must be of
9  different citizenship than all defendants.  *Id.*

10  DP Korea seeks to establish the court's subject matter jurisdiction through diversity jurisdiction,
11  presumably under 28 U.S.C. § 1332(a)(2), which provides a district court with jurisdiction of a civil action
12  "where the matter in controversy exceeds the sum or value of $75,000
13  . . . and is between . . . citizens of a State and citizens or subjects of a foreign state."  Defendants, however,
14  argue that but for DP USA assigning its rights under the DP USA contract to DP Korea, the court would
15  not have subject matter jurisdiction because DP USA would have been a plaintiff.  With DP USA present,
16  complete diversity would not have existed because plaintiff DP USA and the defendant Deiss are California
17  citizens.

18  Known as the federal anti-collusion statute, 28 U.S.C. § 1359 states that "a district court shall not
19  have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or
20  collusively made or joined to invoke the jurisdiction of such court."  "The federal anti-collusion statute is
21  aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary
22  business litigation into the federal courts."  *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) (citing
23  *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29 (1969)).

24  In *Yokeno*, the Ninth Circuit reiterated that certain kinds of diversity-creating assignments warrant
25  heightened scrutiny, including assignments between parent companies and subsidiaries.  *Id.* at 809-10
26  (citing *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 793 (9th Cir. 1989)).  As a result, these assignments
27  are presumptively ineffective to create diversity jurisdiction.  The Ninth Circuit in *Yokeno* further articulated
28  how a party may overcome this presumption: "To overcome this heightened presumption, the party

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                              3

asserting diversity must show more than simply a colorable or plausible business reason. The business reason must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum." *Id.* at 811.

"Because of the heightened scrutiny called for in evaluating assignments by business organizations to subsidiaries or officers, the proffered business reason for the assignment must be evaluated in light of the totality of circumstances." *Id.* at 810. The Ninth Circuit has considered the following five factors to be relevant to this inquiry: (1) did the assignee have a prior interest in the item or was the assignment timed to coincide with the commencement of litigation; (2) was any consideration given by the assignee; (3) was there an admission that the motive was to create jurisdiction; (4) was the assignment partial or complete; and (5) were there good business reasons for the assignment. *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 595-96 (9th Cir. 1996).

**A.     Prior Interest and Timing**

Defendants argue that DP Korea does not appear to have any prior interest in DP USA's former claim against defendants other than being the parent company of DP USA. Mot. at 7. However, DP Korea claims that it has a prior interest in the alleged debt for three reasons. First, the defendants allegedly have a debt with not only DP USA but also with DP Korea, which arises from circumstances similar to defendants' debt to DP USA according to DP Korea. Lee Decl. ¶ 10-12.[2] Second, DP Korea contends that it has not been paid by DP USA for the products that were transferred to DP USA and subsequently sold to defendants. *Id.* Third, DP Korea claims that the nature of its relationship with DP USA – DP USA is DP Korea's wholly-owned subsidiary and was established to facilitate DP Korea's U.S. transactions by warehousing and distributing only DP Korea products – lends it a natural interest in the debts owed to DP USA, including defendants' debt. *Id.* ¶ 7. DP Korea does not deny that the assignment of DP USA's claim occurred only shortly before the commencement of litigation but argues that the timing of the assignment is outweighed by other factors. Reply at 5.

---

[2]     In a motion to dismiss for lack of subject matter jurisdiction where the moving party alleges that a third party collusively assigned its claims to the non-moving party to create diversity jurisdiction, the non-moving party may submit affidavits explaining the motivation behind the assignment. *See Nike v. Comercial Iberica De Exclusivias Deportivas, S.A.*, 20 F.3d 987, 989 (9th Cir. 1994) (non-moving party submitted three affidavits to demonstrate that it had made the assignment for legitimate business purposes).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                                                                  4

### 1. Preexisting Interest

A significant, preexisting interest held by the assignee will assist the assignee in rebutting the presumption of collusion. *See Western Farm Credit Bank v. Hamakua Sugar Co.*, 841 F. Supp. 976, 982 (D. Haw. 1994) (citing *Yokeno*, 973 F.2d at 810, 811). In *Western Farm*, defendant alleged that diversity jurisdiction was created by a collusive assignment of its loans from Hawaii Production Credit Association ("HPCA") to plaintiff Western Farm Credit Bank ("Western Farm"). *Id.* at 983-84. "Through a 1987 agreement between Western Farm and HPCA, Western Farm was to service defendant's loans and had a 95% interest in these loans." *Id.* at 979. Western Farm's interest increased to 98.5% in 1988 and virtually 100% in February 1993. *Id.* The court found that Western Farm had a significant preexisting interest in defendant's loans. DP Korea argues that its interest in defendants' alleged debt to DP USA is analogous to Western Farm's interest, but the court does not agree. Western Farm had a preexisting, percentage of ownership interest directly in the assigned loan. By contrast, DP Korea's preexisting interest in defendants' alleged debt to DP USA is not a direct ownership interest. Its interest can be characterized as the more general interest of a parent corporation in the financial state of its wholly-owned subsidiary or the interest of a creditor in the ability of its debtor (DP USA) to pay for goods received.

DP Korea's asserted preexisting interests are more in line with those asserted by the plaintiff in *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 989 (9th Cir. 1993). In *Nike,* the defendants alleged that Nike International, Ltd. ("NIL") had collusively assigned its claims to sole plaintiff Nike, Inc. ("Nike") to create diversity jurisdiction. *Nike,* 20 F.3d at 989. To refute defendants' allegation, Nike contended that the assignment was motivated by its preexisting interest in the enforcement of NIL's contract rights; the similar interest of Nike's newly-created and wholly-owned subsidiary NIL that performs the tasks that defendant was previously authorized to do; and Nike's interest in protecting its trademarks, trade names, business reputation, and goodwill. *Id.* While the court did not explicitly determine whether Nike's contentions demonstrated that it had a significant, preexisting interest in NIL's former claims against defendant, the court reasoned that "[a]lthough a preexisting interest is a factor to consider, our primary inquiry is whether the assignment would have been made absent the purpose of obtaining a federal forum." *Id.* at 992.

Overall, the circumstances from which defendants' debts to DP Korea and DP USA arose is comparable to how the interest of Nike's newly-created and wholly-owned subsidiary arose. Furthermore, the primary purpose of DP USA's assignment appears to have been to allow the claims to proceed in federal court. DP Korea apparently took the assignment on the mistaken belief that it could not proceed on its claim against defendants in state court. *See* Pl.'s Opp'n at 4:27-5:6. Plaintiff's counsel appeared to have this belief at the hearing on the motion. Based on *Nike*, the court concludes that DP Korea did not have a sufficient pre-existing interest in defendants' debt to DP USA.

### 2. Timing

The timing of DP USA's assignment to DP Korea casts doubt on the legitimacy of the business reasons advanced by DP Korea. In DP Korea's own declaration, Lee describes that after "the full extent of [d]efendants' failure to pay . . . for the products delivered to their customers . . . became known to Dae Poong Korea," DP Korea and DP USA worked with defendants to resolve the problem of defendants' alleged failure and refusal to pay for these products. Lee Decl. ¶ 10-11. DP Korea and DP USA then "decided to reconcile the $180,000 obligation between Dae Poong Korea and Dae Poong USA by assigning [d]efendants' receivable to Dae Poong Korea, together with the cause of action to recover the monies owed." *Id.* ¶ 12. Six days later, DP Korea filed the present action.

In *Yokeno*, the defendant alleged that the assignment of defendant's leasehold interest from Nansay Micronesia, Inc. ("Nansay") to plaintiff Yokeno was collusive. *Yokeno*, 973 F.2d at 806. The Ninth Circuit reasoned that the timing of Nansay's assignment to Yokeno "cast[] doubt on the legitimacy of the business reason advanced by Yokeno." *Id.* at 810. Several months before the assignment, the defendant had informed Nansay that he was planning to file a quiet title action in the state court and had furnished Nansay with a copy of the complaint. *Id.* at 810. "[A]fter unsuccessful settlement discussions, Nansay assigned its interests to Yokeno, who almost simultaneously filed a preemptive quiet title action in federal court." *Id.*

While this case differs from *Yokeno* in that defendants did not furnish DP Korea and DP USA with a potential legal complaint, after which settlement discussions occurred, DP Korea and DP USA did discuss and work with defendants to resolve defendants' alleged debt. Given the parties' presence in the court, these discussions were presumably unsuccessful like the settlement discussions in *Yokeno*. Finally,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                                                                     6

1  only after this non-litigious alternative was exhausted and shortly before litigation was initiated did DP USA
2  assign its claim to DP Korea like the plaintiff in *Yokeno*.

3        **B.**    **Consideration For Assignment**

4        Defendants contend that there is no indication that either DP Korea or DP USA has received any
5  consideration for the assignment. Mot. at 7. However, according to DP Korea, it gave DP USA
6  consideration in the form of forgiving DP USA its $180,000 debt to DP Korea and paying DP Korea
7  $180,000 in return for the assignment of the right, title, and interest in DP USA's claim against defendants.
8  Lee Decl. ¶ 13. DP Korea further contends that this transaction is reflected in the records of both
9  companies. *Id.* ¶ 14.

10       The recital of consideration in an assignment, without more, is not sufficient to establish that
11 business concerns were an independent reason for the assignment. *See Yokeno*, 973 F.2d at 811. District
12 courts must inquire into the adequacy of the consideration and whether the consideration actually changed
13 hands. *Id.* Here, defendants do not submit any evidence controverting DP Korea's affidavit testimony
14 evidencing that DP Korea paid $180,000 for DP USA's assignment of what it believed to be a $180,000
15 claim against defendants. Defendants also do not argue that the $180,000 consideration was inadequate
16 for DP USA's assignment. *Cf. Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F.
17 Supp. 2d 911, 923 (E.D. Va. 2005) ("[A]gents' assignment of their claims to Long & Foster were clearly
18 given in return for adequate consideration, as Long & Foster reimbursed the agents the exact amount . . .
19 that the agents believed they were due under their respective independent contractor agreements."). Thus,
20 the court finds that DP Korea and DP USA exchanged adequate consideration for the assignment. *See*
21 *Western Farm*, 841 F. Supp. at 983. This factor weighs in favor of finding that the assignment would have
22 been made absent the purpose of gaining a federal forum.

23       **C.**    **Admission Of Jurisdictional Motive**

24       The parties do not contest that DP Korea has not admitted that its motive in assuming the right, title,
25 and interest in DP USA's former claim against defendants was to create diversity jurisdiction. Lee Decl. ¶
26 20-21. However, an admission that the assignment was motivated by the creation of diversity jurisdiction is
27 not required to find that the assignment was collusive. *See Nike*, 20 F.3d 991-93. Importantly, as set forth
28

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                            7

1  above, DP Korea has admitted that it took the assignment with the understanding (albeit mistaken) that DP
2  Korea has to proceed on its claim in federal court.

3       **D.**     **Partial Or Complete Assignment**

4       DP Korea contends that DP USA assigned its entire claim against defendants to DP Korea
5  because DP USA has no continuing interest in the debt or litigation. Lee Decl., Ex. A. DP Korea further
6  alleges that it, and not DP USA, is financing this litigation. *Id.* ¶ 19. Defendants, however, note that DP
7  Korea filed a Certificate of Interested Entities or Persons listing DP USA in this action. Mot. at 7.

8       Civil Local Rule 3-16 provides that "[u]pon making a first appearance in any proceeding in this
9  Court, a party must file with the Clerk a 'Certification of Interested Entities or Persons,'" and "[i]f a party
10 has no disclosure to make . . . that party must make a certification stating that no such interest is known
11 other than that of the named parties to the action." Other than the parties, the Certification must disclose
12 any entity "known by the party to have either: (i) a financial interest (of any kind) in the subject matter in
13 controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially
14 affected by the outcome of the proceeding." Civil Local Rule 3-16. The Certification permits judges to
15 evaluate whether a case presents grounds for disqualification or recusal early in the course of the case. *Id.*

16      To evaluate whether an assignment is partial or complete, a court may look to the provisions of the
17 assignment and circumstances surrounding the assignment. *See Kramer*, 394 U.S. at 827 ("[T]he
18 assignment to Kramer is considered together with his . . . simultaneous reassignment of a 95% interest back
19 to Panama" to determine whether the assignment was collusive.); *Yokeno*, 973 F.2d at 811, (considering
20 the integral nature of the assigned interest to the assignor and the lack of a barrier to assignee transferring
21 the assigned interest back to the assignor after the litigation in holding that the assignor has not expressly
22 disavowed any continuing interest in the litigation or its proceeds); *Airlines Reporting Corp. v. S And N*
23 *Travel, Inc.*, 58 F.3d 857, 860 (2d Cir. 1995) ("[W]hile the assignments on their face transfer all right, title
24 and interest in the claims to ARC, in reality, the carriers retain the primary interest in the claims because
25 ARC has agreed to transfer to the carriers any money obtained from the litigation, less the cost of
26 prosecuting the case."). Specifically, courts have relied on provisions in the assignment that expressly
27 disavow any continuing interest in the litigation or its proceeds on the part of the assignor to support a
28 finding that the assignment did not violate § 1359.

The court finds that DP USA's assignment to DP Korea is complete because it contains provisions demonstrating that DP USA has expressly disavowed any continuing interest in the litigation or its proceeds: "Dae Poong U.S.A. hereby assigns to Dae Poong Co., Ltd. all of its right, title and interest to each and every claim, cause of action, demand or right which it has against [defendants]." Lee Decl., Ex. A; *see Western Farm*, 841 F. Supp. at 984. Furthermore, the court does not find the listing of DP USA on DP Korea's Certification to be inconsistent with a complete assignment given that DP USA is DP Korea's wholly-owned subsidiary and consequently, even judgments solely regarding DP Korea are bound to have a limited effect on DP USA's financial interest in DP Korea. Thus, the court finds that this factor tips against finding a collusive assignment between DP USA and DP Korea. *Dweck*, 877 F.2d at 793.

### E. Sufficiently Compelling Business Reason

According to DP Korea, its assumption of the right, title, and interest in DP USA's purported $180,000 claim against defendants was based on a sufficiently compelling business rationale for assignment even in the absence of gaining access to the federal forum. First, DP Korea alleges that regardless of whether defendants' orders were placed with DP Korea or DP USA, DP Korea was the entity that incurred the expense of manufacturing, packaging, and shipping the products that were sold by defendants. Lee Decl. ¶ 16. As a result, DP Korea contends that it has suffered the ultimate economic loss for defendants' alleged failure to pay DP USA $180,000 because this failure in turn undermined the ability of DP USA, allegedly a start-up company with limited resources, to properly pay DP Korea. *Id.* ¶¶ 16, 19. In *Nike,* the defendants alleged that Nike International, Ltd. ("NIL") had collusively assigned its claims to sole plaintiff Nike, Inc. ("Nike") to create diversity jurisdiction. *Nike*, 20 F.3d at 989. The Ninth Circuit in *Nike* found that Nike had not "advanced a 'sufficiently compelling' business reason" for the assignment despite Nike's ultimate entitlement to NIL's profits. *Id.* at 992. Similarly, DP Korea's ultimate entitlement to defendants' alleged overdue payment to DP USA for products manufactured by DP Korea is not a sufficiently compelling business reason for assignment in the absence of gaining access to the federal forum, particularly in light of DP Korea's belief that it was required to bring its claims in federal court.

Second, the president of DP USA, Jimmy Lee, states in his declaration that without the $180,000 in funds that was expected to have come from defendants' payment and with DP USA's outstanding $180,000 obligation to DP Korea for the products sold by defendants, "it [was] uncertain if Dae Poong

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                                        9

1  USA would have been able to maintain its continuing business obligations.  Therefore, making the
2  [a]ssignment was an essential step by Dae Poong USA for its financial viability." Lee Decl. ¶ 20.  In
3  *Western Farm*, 841 F. Supp. at 983-84, defendant alleged that diversity jurisdiction was created by a
4  collusive assignment of its loans from HPCA to plaintiff Western Farm.  However, to demonstrate that it
5  had a sufficiently compelling business reason for the assignment, Western Farm asserted that it "would have
6  entered into the assignment even if diversity jurisdiction was not created by the assignment in order to
7  restore HPCA's financial viability and to return all of defendant's loans to accrual status."  *Id.* at 984.  The
8  court accepted Western Farm's assertion because Western Farm's "uncontroverted affidavit testimony and
9  documentary evidence amply support[ed] [its] assertion."  *Id.* at 983.

10  The uncontroverted affidavit testimony and documentary evidence does not support DP Korea's
11  assertion that DP USA's assignment of its claim was necessary to restore DP USA's financial viability.
12  Lee's conclusory statement that "[a]ssignment was an essential step by Dae Poong USA for its financial
13  viability" because, otherwise, "it [was] uncertain if Dae Poong USA would have been able to maintain its
14  continuing business obligations" is a far cry from the ample evidence supporting Western Farm's assertion.[3]
15  More importantly, the court is not required to accept conclusory, self-serving statements in declarations, if
16  those conclusions cannot reasonably be drawn from the facts alleged.  *See Nike*, 20 F.3d at 989, 992
17  (holding that Nike "has not advanced a 'sufficiently compelling' business reason" although an affidavit from
18  the Chief Executive Officer of Nike "reiterated Nike's position that the assignment of claims was made for
19  good business reasons and not for purposes of improper collusion."); *Clegg v. Cult Awareness Network*,
20  18 F.3d 752, 754-55 (9th Cir. 1994) (holding, in dismissal for failure to state a claim, that the court is not
21  required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions
22  cannot reasonably be drawn from the facts alleged." ); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d
23  1168, 1171 (9th Cir. 1997) ("To survive summary judgment, an affidavit . . . must not be merely
24  self-serving and must contain sufficient detail.").

---

[3] Specifically, Western Farm's evidence demonstrated that its assumption of the entire interest in the loans relieved HPCA of the following burdens: (1) HPCA paying half of its net income to finance Western Farm's participation in defendant's loans; (2) HPCA not being able to offset these payments to Western Farm by the interest on defendant's loans when these loans went on nonaccrual status approximately six years before the assignment; (3) the Farm Credit Administration's Cease and Desist Order imposing accounting obligations on HPCA, which it could only meet with great difficulty, as Western Farm was servicing the loans. *Western Farm*, 841 F. Supp. at 983-84.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                                                  10

1   DP Korea claims that while DP USA could not have funded this litigation with its limited resources,
2   DP Korea is able to fund this litigation because it is a mature corporation with greater capital and resources
3   than DP USA. Lee Decl. ¶ 19. In addition, according to DP Korea, the consolidation of DP Korea's and
4   DP USA's claims is economically efficient for its corporation due to the similarity of the facts underlying the
5   two claims. *Id.* ¶ 17. In *Nike*, Nike maintained that cost savings from excluding NIL from its litigation
6   compelled the assignment of NIL's claims to Nike. *Nike*, 20 F.3d 992. However, the Ninth Circuit did
7   "not find any obvious cost savings from excluding NIL" when both NIL's and Nike's principal place of
8   business was in the forum state. *Id.* The Ninth Circuit also noted that "Nike does not explain why NIL's
9   presence in the litigation would increase costs." *Id.* While business reasons that are related to litigation and
10  not specific to a desire to litigate in a federal forum may establish a sufficiently compelling business reason,
11  the court, like the Ninth Circuit in *Nike*, finds no explanation or factual basis for either of DP Korea's
12  assertions. *See id.* at 992-93. Furthermore, like NIL in *Nike*, which was purportedly excluded from
13  Nike's litigation to save costs but had its principal place of business in the forum state, DP USA has been
14  purportedly excluded from this litigation for economic efficiency, but its principal place of business is
15  located in California, the forum state. Consequently, the court does not find any obvious cost savings to
16  DP Korea from assigning DP USA's claim to DP Korea.
17        In sum, the business reasons advanced by DP Korea for its assumption of DP USA's claim do not
18  establish a sufficiently compelling business reason to rebut the presumption of collusion that adheres when
19  an assignment occurs between a company and its subsidiary.
20        **F.     Totality of Factors**
21        DP Korea has prevailed only in establishing that adequate consideration was exchanged for the
22  assignment and that the assignment was complete. However, the Ninth Circuit has provided that "even
23  when there is a complete assignment, collusion may be found." *Attorneys Trust,* 93 F.3d at 596. "That is
24  most likely to be where there is an excellent opportunity for manipulation, as in transfers between
25  corporations and their subsidiaries . . . ." *Id.* DP Korea's prior interest in the assigned claims, the timing of
26  the assignment, and DP Korea's insufficiently compelling business reasons weigh in favor of finding that the
27  assignment between DP Korea and DP USA was collusive. The court's primary inquiry in determining
28  whether an assignment is collusive is whether the business reason motivating the assignment was sufficiently

compelling absent the purpose of obtaining a federal forum. *See Nike*, 20 F.3d 992. Considering the totality of the circumstances surrounding the assignment, DP Korea has failed to meet its burden of rebutting the presumption that the assignment was entered into to collusively create diversity jurisdiction. *See Yokeno,* 973 F.2d at 809-810. The court concludes that it lacks subject matter jurisdiction under 28 U.S.C. § 1359.

### III.  ORDER

For the foregoing reasons, the court GRANTS defendants' motion to dismiss. The case management conference currently set for August 19, 2005 at 10:30 a. m. is vacated.

DATED:      8/16/05                              /s/ Ronald M. Whyte
                                                 RONALD M. WHYTE
                                                 United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—C-05-01470 RMW
SHL                                    12

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Gordon I. Endow | gendow@gordonrees.com |
| John L. Haller | jhaller@gordonrees.com |
| Charles V. Berwanger | |
| Harris F. Brotman | hbrotman@brotmangroup.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Gary K. Salomons | garys@ecofflaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     8/16/05                        /s/ MAG
                                     **Chambers of Judge Whyte**